UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|   |   |
|---|---|
| ARNOLD and CYNTHIA BRUINSMA, ) | |
| ) | |
| Plaintiffs, ) | Case No. 5:05-cv-81 |
| ) | |
| v. ) | Honorable Joseph G. Scoville |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, ) | **OPINION** |
| ) | |
| Defendant. ) | |
| ) | |

       This is an action for breach of contract under a standard flood insurance policy (SFIP) issued by defendant State Farm Fire and Casualty Company to plaintiffs, Arnold and Cynthia Bruinsma. State Farm issued the policy under the authority of the National Flood Insurance Act (NFIA), 42 U.S.C. § 4001. Plaintiffs' claim arises from damage to their home caused by a flood on May 23, 2004. They brought suit in the Kent County Circuit Court by filing a one-count complaint for breach of contract. Defendant thereafter removed the action to this court.

       Presently pending before the court are defendant's motion for judgment on the pleadings and its separate motion for summary judgment. The motion for judgment on the pleadings seeks to dismiss all state-law claims on the theory that the NFIA preempts all state causes of action based on the handling or disposition of claims under the SFIP. The motion for summary judgment asserts that plaintiffs' federal claims under the SFIP are barred by their failure to file a timely proof of claim and, alternatively are precluded by substantive provisions of the policy. The parties have

consented to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (*See* Consent and Order of Reference, docket # 12). The court conducted oral argument on the motions on January 13, 2006. For the reasons set forth below, the court concludes that plaintiffs' only claim is for breach of contract under federal law and that this claim is barred by plaintiffs' failure to file a timely proof of loss as required by Article VII(J)(4) of the SFIP.

**Findings of Undisputed Facts**

The facts established by the evidence of record, viewed in a light most favorable to plaintiffs, are as follows:

Plaintiffs, Arnold and Cynthia Bruinsma, own a home located on Riverbank Ave., N.E., in Grand Rapids, Michigan, near the Grand River. On May 23, 2004, flood water from the Grand River entered the foundation and crawlspace of the house, coming within an inch of the subfloor. As a result of the flood, the wood floors and carpeting of the house were soaked, and the Bruinsmas claimed the occurrence of significant structural damage as well.

At the time of the flood, the property was covered by a standard flood insurance policy (dwelling form) issued by defendant State Farm Fire and Casualty Company (Plf. Ex. 2, docket # 23). Plaintiffs promptly notified State Farm of the fact of flood damage. Plaintiffs contacted a contractor, Jarvis Construction, to help dry out the house and to make necessary temporary repairs. In addition, Jarvis estimated the cost of further repair work. Jarvis Construction faxed its estimates directly to State Farm on June 8, June 17, and June 21, 2004. Shortly thereafter, State Farm's adjuster inspected the premises and orally informed plaintiffs that State Farm would not cover structural damage to the home. By letter dated June 30, 2004, the adjuster confirmed

plaintiffs' concerns about the structural damage to the building and informed them that the insurance company would hire a local structural engineer to inspect the home to determine the cause of the structural damage. (Plf. Ex. 7). In the same letter, he agreed that State Farm would cover other items of loss, including replacement of the carpet pad, cleaning of the carpet, and drying out and repairing insulation in the crawlspace. (*Id.*).

State Farm engaged John Krause, P.E., who inspected the premises on July 2, 12, and 16, 2004. On July 21, 2004, Mr. Krause provided a lengthy written report to the insurance company. (Plf. Ex. 8). The report concluded that the sagging of the living room floor and other parts of the house was a result of the settlement of the foundation, a process that Mr. Krause believed had been underway for at least fourteen years. The report made certain recommendations concerning modifications necessary to prevent further damage to the structure.

Plaintiff Arnold Bruinsma submitted an undated proof of loss to State Farm. (Plf. Ex. 9). Plaintiffs have presented no evidence to establish the date upon which the proof of loss was submitted. On September 3, 2004, a claims representative of State Farm acknowledged receipt of the proof of loss. (Letter, Plf. Ex. 10). The letter recognized that the $40,000.00 figure set forth in the proof of loss was a rough estimate and indicated that once foundation estimates were received, State Farm might ask plaintiffs to submit an amended proof of loss. The same letter transmitted a draft in the amount of $4,373.83 and indicated that once further estimates are received, "further payments will be made on the file." (*Id.*).

On January 14, 2005, plaintiffs received a letter from State Farm rejecting the proof of loss "because we do not agree with the amounts claimed for building damages." (Plf. Ex. 11). The letter indicated that the estimate submitted by Jarvis Construction was inconsistent with the

scope of coverage under the policy. The letter went on to indicate that upon receipt of a valid proof of loss, State Farm was prepared to make an additional cash value payment of $2,428.13 for the undisputed damage under the policy. The letter also said that the claim representative was extending for a period of sixty days the time allowed under the policy for submitting a proof of loss. Thereafter, however, the insurance company refused to cover structural loss, contending that it was not covered by the policy in the circumstances of this case.

Plaintiffs began this action by filing a one-count complaint in the Kent County Circuit Court on April 15, 2005. By notice of removal filed May 16, 2005, defendant removed the action to this court under 28 U.S.C. § 1441(a), alleging the existence of a federal question.

## Discussion

### I. The National Flood Insurance Program

Congress created the National Flood Insurance Program in the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129. The NFIA was enacted to provide a unified national program to reduce and avoid losses caused by floods by making reasonably priced flood insurance available for residential and commercial properties. The Federal Emergency Management Administration (FEMA) administers the National Flood Insurance Program. 42 U.S.C. § 4081(a). Pursuant to statutory authorization, FEMA is empowered to promulgate regulations establishing the general method by which insurance claims for losses under a flood insurance policy may be adjusted and paid. 42 U.S.C. § 4019. FEMA has promulgated regulations setting forth the rights of insurance companies and their insureds under the National Flood Insurance Program. 44 C.F.R. Pts. 61-78. The regulations establish the "Write Your Own" (WYO) program, pursuant to which private

insurance companies such as State Farm issue standard flood insurance policies, or SFIPs. 44 C.F.R. §§ 62.23-.24.

FEMA regulations dictate the precise content, word-for-word, of the SFIP. 44 C.F.R. Pt. 61, app. A(1) (2004 ed.). The regulations provide that the insurance company must use the standard form policy and that "no provision of the said documents shall be altered, varied, or waived other than by the express written consent of the Administrator through the issuance of an appropriate amendatory endorsement. . . ." 44 C.F.R. § 61.13(d). The insured is informed of the this restriction in the text of the policy itself. (Plf. Ex. 2, art. VII(D)). The Supreme Court has long held that an insured under a federal insurance program is charged with constructive knowledge of all provisions of the policy and the governing regulations. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947).

The Federal Treasury underwrites all operations of the National Flood Insurance Program. This includes both payment of claims and the costs of adjustment. 42 U.S.C. § 4017(d)(1). Consequently, FEMA's arrangement with WYO carriers, such as State Farm, specifies that FEMA will pay all approved claims, with the carrier receiving a payment from FEMA of 3.3 percent of the amount paid to the insured. *See* 44 C.F.R. Pt. 62, App. A, art. III(C)(1). Furthermore, FEMA reimburses the carrier for its defense costs in the event of a dispute. 44 C.F.R. § 62.23(i)(6). Consequently, the WYO carrier is a "fiscal agent" of the United States. 42 U.S.C. § 4071(a)(1). These features of the National Flood Insurance Program remove all disincentive from the insurance company to deny meritorious claims. *See Neill v. State Farm Fire & Cas. Co.*, 159 F. Supp. 2d 770, 774 (E.D. Pa. 2000); *3608 Sounds Ave. Condo. Ass'n v. South Carolina Ins. Co.*, 58 F. Supp. 2d 499, 502 (D.N.J. 1999).

The policy language, as dictated by FEMA regulations, provides that the policy and all disputes arising from the handling of any claim thereunder are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, and federal common law. (Plf. Ex. 2, art. IX). Subject-matter jurisdiction in the federal courts to hear claims under the policy is created by 42 U.S.C. § 4072. The federal courts have uniformly held that federal law governs all aspects of such claims and that the federal courts have exclusive jurisdiction over suits under the NFIA. *See Gallup v. Omaha Prop. & Cas. Ins. Co.*, No. 04-31213, ___ F.3d ___, 2005 WL 3485890 (5th Cir. Dec. 21, 2005); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166-67 (3d Cir. 1998); *State Bank of Coloma v. Nat'l Flood Ins. Program*, 851 F.2d 817, 819 (6th Cir. 1988).

## II.     Motion for Judgment on the Pleadings

Defendant has moved for a judgment on the pleadings, dismissing all claims other than a federal cause of action under the standard flood insurance policy. In support of its motion, defendant has submitted an extensive brief and supporting materials, advancing numerous alternative arguments. The citation of a single authority would have sufficed. In *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943 (6th Cir. 2002), the Sixth Circuit Court of Appeals held that the NFIA preempts all state-law causes of action that are based on the handling or disposition of claims under the standard flood insurance policy. 289 F.3d at 949. *Gibson* is controlling. Furthermore, it is unclear that plaintiffs' one-count complaint can be reasonably read to assert any claim other than for breach of contract. Nevertheless, the law in this circuit as announced in *Gibson* is clear that plaintiffs' only claim is for breach of contract, and that the breach of contract claim is governed

completely by federal law. Therefore, defendant's motion for judgment on the pleadings, which plaintiffs have not opposed, will be granted. Plaintiffs' only viable claim is under the NFIA.

### III. Lack of Timely Proof of Loss

The standard flood insurance policy requires a claimant to submit a proof of loss within sixty days of the loss:

> 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
> a. The date and time of loss;
> b. A brief explanation of how the loss happened;
> c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in title or occupancy of the covered property during the term of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> i. The inventory of damages personal property described in J.3. above.

(Plf. Ex. 2, art. VII(J)(4)). Defendant seeks judgment in its favor on the ground that plaintiffs did not submit their sworn proof of loss before July 22, 2004, the date upon which the sixty-day period under the policy expired.

The federal circuit courts of appeals are unanimous in holding that the proof of loss requirement is to be "strictly enforced." *See Neuser v. Hocker*, 246 F.3d 508, 510 (6th Cir. 2001) (collecting cases); *accord Sanz v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1317-18 (11th Cir. 2003); *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir. 2001). In reaching this conclusion, these appellate courts have relied on the principles enunciated by the Supreme Court in *Federal Crop Ins.*

*Corp. v. Merrill*, 332 U.S. 380 (1947). In that case, the Court recognized "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." 332 U.S. at 385. On this basis, the *Merrill* Court held that an insured seeking reimbursement under a federal insurance program must strictly comply with all terms and conditions of the insurance policy. Consequently, the courts hold that a claimant who has not fully complied with "all" conditions of the policy before filing suit is thereby "divested" of the right to sue. *See Mancini*, 248 F.3d at 733-34.[1]

Plaintiffs bear the burden of proof to show actual compliance with all conditions precedent under the policy, including the filing of a timely and sufficient proof of loss. *See Mancini*, 248 F.3d at 734; *Harris v. State Farm Fire & Cas. Co.*, No. Civ. A. 4:05cv5, 2006 WL 73602, at * 6 (E.D. Va. Jan. 11, 2006); *Mahood v. Oklahoma Prop. & Cas.*, 174 F. Supp. 2d 284, 290 (E.D. Pa. 2001). When faced with defendant's motion for summary judgment, which pointed out the lack of proof of the timely submission of a proof of loss, plaintiffs had the affirmative duty of coming forward with evidence upon which a reasonable jury could base a finding that plaintiffs submitted their sworn proof of loss on or before July 22, 2004. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [nonmovant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Furthermore, the nonmoving party may not avoid a properly supported motion for summary judgment simply by arguing that it involves an issue of fact or turns on credibility considerations. "Instead, the nonmoving party must

---

[1] This rule of law contrasts markedly with general insurance law in this country, under which the failure of an insured to provide a timely proof of loss is not dispositive of a claim unless the insurance company bears its burden of showing actual prejudice to its position. *See, e.g., Koski v. Allstate Ins. Co.*, 572 N.W.2d 636, 638-39 (Mich. 1998).

present evidence to defeat a properly supported motion for summary judgment," by pointing to facts sufficient to support a jury verdict in his favor. *See Fogerty v. MGM Holdings Corp., Inc.*, 379 F.2d 348, 353 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1064 (2005). Plaintiffs have failed in their burden of raising a triable issue of fact. The evidence submitted by defendant indicates that the proof of loss was submitted no earlier than September 1, 2006. The best that plaintiffs can muster is the testimony of Mr. Bruinsma, who indicates that he may have submitted a proof of loss at some unidentified earlier date. Faced with this vague testimony, a jury could not reasonably find that plaintiffs submitted the proof of loss on or before July 22, 2005. To his credit, plaintiffs' counsel conceded at oral argument that plaintiffs can produce no evidence to show that the proof of loss, plaintiffs' Exhibit 9, was filed in a timely manner. Under controlling Sixth Circuit authority, an insured who files a late proof of loss may not prevail in an action under the SFIP. *Neuser*, 246 F.3d at 511-12.

Plaintiffs nevertheless argue that they have complied with the requirements of article VII(J)(4) of the policy, on three alternative bases: (1) State Farm's own documentation shows that plaintiffs submitted all of the required information to the insurer within the sixty-day period; (2) defendant is estopped from asserting noncompliance with the sixty-day requirement; and (3) the insurance company waived the sixty-day period. For the reasons set forth below, none of these arguments withstands scrutiny under prevailing law.

Substantial Compliance. Plaintiffs' first argument is that plaintiffs submitted all of the information required by the proof of loss form to the insurance company within the sixty-day period. They argue that the various reports, letters, and other submissions to the company, taken together, constitute a "proof of loss as defined under the policy." (Plf. Brief, docket # 23, at 10-11).

Plaintiffs, however, are unable to cite a single case in which the federal courts have allowed an insured to fulfill the requirement of a timely proof of loss under the SFIP by reliance upon an amalgamation of reports and other communications that do not purport on their face to be a sworn proof of loss. The law is directly to the contrary. Numerous federal courts have considered and rejected the argument that an insured's submission of estimates and other insurance communications can be considered tantamount to a sworn proof of loss. *Mancini v. Redland Ins. Co.*, 248 F.3d 729 (8th Cir. 2001), is directly on point. In that case, the district court held that the insured had submitted a valid proof of loss by sending to the insurance company a number of reports and forms and by signing the transmittal sheet. The Eight Circuit found that, although the materials that the insured submitted contained all relevant information called for by the proof of loss form, they were not "signed and sworn" by the insured as required by the policy and therefore did not strictly comply with the regulations. "Given the special nature of this policy, the [insured] must show actual and complete compliance with this requirement: it is not sufficient to show that they substantially complied or that the insurer suffered no prejudice." 248 F.3d at 734. On this basis, the court held that the failure of the insured to submit a signed and sworn statement of the amount claimed within the sixty-day period divested the insured of the right to sue. 248 F.3d at 735. All other federal courts to face the question have agreed. *See, e.g., Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir. 2000); *Gowland v. Aetna*, 143 F.3d 951, 953-54 (5th Cir. 1998); *Harris v. State Farm Fire & Cas.*, 2006 WL 73602, at * 7; *Matthews v. Farmers Ins. Co. of Or.*, No. Civ. 04-6117-AA, 2005 WL 1565261, at * 5 (D. Or. June 27, 2005) (describing the precedent in this area as "overwhelming"); *Gagliardi v. Omaha Prop. & Ins. Co.*, 952 F. Supp. 212, 215 (D.N.J. 1997) (substantial compliance with policy requirements by submitting detailed estimates regarding flood

loss insufficient to meet policy requirements). This court must therefore reject plaintiffs' argument that they substantially complied with the proof of loss requirements of the policy.

Estoppel. Plaintiffs next argue that the insurance company is estopped to rely on the sixty-day proof-of-loss requirement. Plaintiffs rely on a series of older cases which adopted a rule that the government would be estopped from denying that plaintiffs submitted a proof of loss in a timely fashion "if plaintiffs had demonstrated that they were affirmatively misled into thinking the filing was unnecessary by agents of FEMA, there is no prejudice to the insurer, and the insurer was otherwise on notice of the claim and the information that would have been provided in the proof of loss." *Hidenfelter v. Director, Fed. Emergency Mgmt. Agency*, 603 F. Supp. 434, 438 (W.D. Mich. 1985); *accord Meister Bros., Inc. v. Macy*, 674 F.2d 1174, 1176 (7th Cir. 1982).

Plaintiffs' reliance on these older cases, and the theory of estoppel which they espouse, is foreclosed by the Supreme Court's later decision in *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990). In *OPM*, the Court considered the question whether erroneous oral and written advice given by a government employee to a benefit claimant may give rise to an estoppel against the government and thereby entitle the claimant to a monetary payment not otherwise permitted by law. The Court held that payments of money from the Federal Treasury are limited to those authorized by statute. In light of this constitutional limitation, the Court held that the government cannot be estopped in a case where a claimant is seeking public funds. "In this context, there can be no estoppel, for courts cannot estop the Constitution." 496 U.S. at 434. Since the *OPM* decision, no federal court has ever upheld a claim of equitable estoppel by an insured seeking an award of public funds under a Standard Flood Insurance Policy. To the contrary, the

federal courts of appeals have uniformly rejected the availability of estoppel in this circumstance, by reason of the Supreme Court's clear holding in the *OPM* case. *See, e.g., Mancini*, 248 F.3d at 735; *Gowland*, 143 F.3d at 955; *Forman v. FEMA*, 138 F.3d 543, 545-46 (5th Cir. 1998). In *Gowland*, the Fifth Circuit explained:

> When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution. "Any exercise of a power granted by the Constitution to one of the other branches of government is limited by a valid reservation of congressional control over funds in the Treasury."

143 F.3d at 955 (quoting *OPM*, 496 U.S. at 425); *accord Harris v. State Farm Fire & Cas. Co.*, 2006 WL 73602, at * 8-9 (collecting cases); *Kohler v. FEMA*, No. Civ. A. 04-1573, 2005 WL 757267, at * 4-5 (E.D. La. Mar. 30, 2005); *Jamal v. Travelers Lloyds of Texas Ins. Co.*, 131 F. Supp. 2d 910, 918 (S.D. Tex. 2001).

Furthermore, those cases decided before *OPM* that did recognize the possibility of an estoppel against the government required that the insured show "affirmative, serious misconduct by a government agent that was reasonably relied upon to a party's detriment." *Diamond v. FEMA*, 689 F. Supp. 163, 169 (E.D.N.Y. 1988). In the present case, plaintiffs can point to no affirmative, wrongful act of State Farm occurring before July 22, 2004, that might have induced plaintiffs to miss the sixty-day deadline. The most that plaintiffs can point to is the insurance company's failure to notify them, after September 1, 2004, that their proof of loss was late. Even under older authorities, the courts would have rejected plaintiffs' estoppel argument because of the absence of an affirmative, serious act of misconduct by the insurance company. After *OPM*, the defense is simply unavailable.

<u>Waiver</u>.  Finally, plaintiffs assert that the insurance company waived compliance with the proof of loss requirement.  Plaintiffs rely on the following provision of the SFIP:

> 9.   At our option, we may accept the adjuster's report of the loss instead of your proof of loss.  The adjuster's report will include information about your loss and the damages you sustained.  You must sign the adjuster's report.  At our option, we may require you to swear to the report.

(Plf. Ex. 2, art. VII(J)(9)).  Plaintiffs rely on the Ninth Circuit decision in *Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652 (9th Cir. 2002), in which the court held that repeated assurances by an insurance adjuster, coupled with the insurance company's continued processing of an investigation of the insured's claim for a year despite his failure to submit a timely proof of loss raised a genuine issue of fact concerning the waiver defense.  309 F.3d at 659.

*Pecarovich* stands alone in recognizing a waiver of the proof of loss requirement by acts and omissions by the WYO carrier after the insured has failed to comply with the proof of loss requirement.  *Pecarovich* is inconsistent with every other federal appellate pronouncement on the issue, including previous decisions of the same court.  For example, in *Flick*, the Ninth Circuit held that "a claimant under a standard flood insurance policy may not avoid strict enforcement of the sixty-day sworn proof-of-loss requirement, except through a valid waiver by the Federal Insurance Administrator."  205 F.3d at 391-92 (citing 44 C.F.R. § 61.13(d)).  The same court had earlier held that a WYO carrier does not waive the sixty-day limit "by answering claimants' inquiries or by considering new information" after the expiration of the deadline.  *Wagner v. Director, FEMA*, 847 F.2d 515, 520 (9th Cir. 1988).

The vast majority of appellate courts who have addressed the issue have determined that a WYO carrier's ability to waive compliance with the proof-of-loss requirement is expressly

subject to FEMA regulations and procedures. In *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805 (3d Cir. 2005), the Third Circuit examined the relevant FEMA regulations and determined that a carrier's ability to grant a waiver under article VII(J)(9) of the policy is limited to claims under $7,500.00. In all other cases, the waiver must come from FEMA itself. 404 F.3d at 811. Other federal circuits agree. *See Sanz*, 328 F.3d at 1316; *Gowland*, 143 F.3d at 954. In the present case, as the ultimate claim for loss exceeded $50,000.00, State Farm had no authority under FEMA regulations to waive strict compliance with the proof-of-loss requirement.

Additionally, the policy provision upon which plaintiffs rely plainly addresses only the form of the proof of loss. (Plf. Ex. 2, art. VII(J)(9)). This provision says nothing about the timeliness of the proof of loss and does not purport to give the insurer authority to alter or vary the clear requirements of the policy concerning the sixty-day time limit. Rather, the provision addresses only the form of the proof of loss. It allows the insurance company, at its option, to accept an adjuster's report if it is signed by the insured. Under this provision, if plaintiffs had signed Mr. Krause's report and submitted it to the insurance company before July 22, 2004, the insurance company would have had the option to invoke this provision of the policy. Plaintiffs have not shown, however, that they complied with this provision by tendering a signed copy of Mr. Krause's report before the expiration of the sixty-day period. Consequently, even if the court were to accept the theoretical possibility of a waiver in this case, plaintiffs have failed in their burden to establish compliance with article VII(J)(9) of the policy.

**Conclusion**

The uniform rule of law in this country is that "strict adherence to SFIP proof of loss provisions, including the sixty-day period for providing proof of loss, is a prerequisite to recovery under the SFIP." *Suopys*, 404 F.3d at 810 (collecting cases). Plaintiffs have produced no evidence upon which a reasonable jury could find that plaintiffs complied with the proof-of-loss provision before July 22, 2004. Plaintiffs' reliance on the doctrines of substantial performance, equitable estoppel, and waiver find no support in the case law. Plaintiffs' failure to file a proof of loss within sixty days, absent a written waiver from FEMA itself, "eliminates the possibility of recovery." *Sanz*, 328 F.3d at 1314. Defendant's motion for summary judgment will therefore be granted on the ground that plaintiffs failed to file a timely proof of loss. In these circumstances, it is unnecessary for the court to address the other issues under the policy raised by the parties.

Dated: January 23, 2006              /s/ Joseph G. Scoville
                                     United States Magistrate Judge